MARY MURPHY *vs.* CHARLES F. WITHINGTON.

Suffolk.    November 16, 1906. — January 4, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.*

If a man driving in a buggy in a city street sees ahead of him the structure of an elevated railway under which he will have to pass and, knowing that his horse is likely to be excited by the passage of trains upon the elevated structure and when so excited is likely to quicken his pace, proceeds to drive under the structure in an ordinary way with a loose rein when a train suddenly appears overhead and, the horse becoming nervous and making a bolt forward, he draws back the reins until his hands are at his shoulders but owing to the looseness of the reins is unable to get proper control of the horse, and the horse knocks down and injures a woman crossing the street, this is evidence of his negligence in an action brought against him by the woman for her injuries.

TORT for personal injuries incurred in the manner described in the opinion.    Writ dated December 3, 1901.

In the Superior Court *Schofield,* J. refused a request of the defendant to rule that the plaintiff was not entitled to recover, and submitted the case to the jury.    The jury returned a verdict for the plaintiff in the sum of $5,500, of which on requirement of the judge the plaintiff remitted all in excess of $4,500.    The defendant alleged exceptions.

*Asa P. French,* (*J. S. Allen, Jr.* with him,) for the defendant.

*E. R. Anderson & A. M. Pinkham,* for the plaintiff, were not called upon.

HAMMOND, J.    This is an action of tort for personal injuries received by reason of being knocked down on the cross walk on the southerly portion of Massachusetts Avenue in Boston on the easterly side of Washington Street, by a horse and buggy driven by the defendant, in the daytime of July 19, 1901.    It was not disputed at the trial that the plaintiff was knocked down by a team driven by the defendant, and the only questions were whether the plaintiff was careful and the defendant careless.

The plaintiff testified that when she came to the southerly crossing of Washington Street and Massachusetts Avenue " she stood and looked to the right and to the left; that she did not

see any carriage or anything that would stop her crossing, but saw a car going slowly up Washington Street toward Roxbury; that she proceeded to walk along in the same direction the car was going; that when in the middle of the crossing she was thrown down and became unconscious; that she did not see any carriage strike her." She further testified that "as she came along Washington Street and came to the down town corner of Massachusetts Avenue and before she started to cross at all, she stood and looked at each side to make sure there was nothing to hinder her crossing the street; that she did not see anything to hinder; that she then walked across the first driveway and the grass plot; that when she got to the other side of the grass plot she stood and looked and could see nothing to hinder her crossing the street; that she then walked right along until she was thrown down." Upon cross-examination she testified that she looked both ways on Massachusetts Avenue and did not see any horse and team coming, and the first thing she knew she was struck and knocked down. It is manifest that upon this evidence the question of her due care was for the jury.

The defendant strenuously contends that "a careful analysis of the whole evidence makes it clear that the injuries sustained by the plaintiff were the result of circumstances for which he was not responsible; that there was no sufficient evidence that his conduct toward the plaintiff was negligent conduct; that, putting it conservatively, the evidence was at least as consistent with due care as with negligence on his part; and that, therefore, the case should not have been submitted to the jury"; and in support of that contention his counsel has made an elaborate argument.

We have tried to make that "careful analysis" and find ourselves unable to agree with the defendant's contention. There is some conflict in the evidence, and various views, some favorable to the plaintiff and some to the defendant, might be entertained as to the cause of the accident. With some slight modification we accept the views set forth in the brief of the plaintiff as to what the evidence warranted the jury in finding. The jury might have found that the defendant, knowing that his horse was liable to be excited by the passage of trains upon the elevated structure and when so excited was liable to quicken

his pace, drove toward the structure which was plainly in sight for a considerable distance away, making no effort to anticipate the trouble likely to arise, but driving in an ordinary way with a loose rein; that the horse became nervous and that by reason of the looseness of the reins the defendant, although he drew the reins so that his hands were up to his shoulders, was unable to get proper control of the horse in time to avert the collision with the plaintiff.* Upon such a finding the jury might conclude that the accident was due to the negligent conduct of the defendant in thus driving such a horse while approaching such a place. Or the jury might have taken another view of the evidence and found that notwithstanding the looseness of the reins and the sudden starting of the horse the defendant did get control of the horse before crossing Washington Street; that before reaching the plaintiff the horse was going only six miles an hour and trotting in such a manner as not to have done any injury to the plaintiff upon the cross walk if the defendant had used ordinary care in guiding him; that the defendant, instead of guiding towards the left thereby avoiding a collision, guided towards the right, thereby causing the accident; and that in this way the defendant was negligent.

The case was properly submitted to the jury.

*Exceptions overruled.*

---

* The frightening of the horse was described by the defendant as follows : " I was driving in a Goddard buggy with the curtains down and the top lifted back one reach. I was alone, driving along Massachusetts Avenue. At that time the elevated road over Washington Street at Massachusetts Avenue had been in operation only about a month. As I approached Washington Street I had one rein in each hand and was driving slowly, quietly trotting at the usual gait of the horse. Q. As you approached the crossing of Washington Street and Massachusetts Avenue what if anything happened ? A. An elevated train came into sight suddenly around the corner of the building in front of and fairly over the horse's head. The elevated station between Northampton Street and Massachusetts Avenue was at my right. The train was coming from Roxbury, and was coming to a stop. — Q. What happened then ? A. The horse suddenly jumped forward and made a bolt to get out of the way, apparently."